# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN CRAIG STEVENS,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>Defendant. | Case No. 1: 12-cv-00020-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT AND DENYING PLAINTIFF'S REQUEST FOR COURT ORDER**<br><br>(Docs. 20, 27) |

## BACKGROUND

Plaintiff Ryan Stevens ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title XVI of the Social Security Act.[1] The matter is

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for benefits on June 3, 2007, alleging disability beginning June 28, 2006. AR 169-172, 182-183. Plaintiff's application was denied initially and on reconsideration. AR 93-103. Plaintiff failed to timely file a notice to appear before an Administrative Law Judge (ALJ), but showed good cause, and the agency set a hearing for July 29, 2009. AR 43-60, 104-110. On July 29, 2009, Plaintiff appeared before ALJ Robert Milton Erickson for a preliminary hearing. AR 43-60. On April 21, 2010, a second hearing was held before ALJ Benjamin F. Parks. AR 43-88. ALJ Parks subsequently issued an order denying benefits on June 18, 2010, finding Plaintiff was not disabled. AR 21-30. This appeal followed.

**Medical Record**

Plaintiff's alleged disability stems from a 2006 on the job injury. While working for a construction company, Plaintiff was run over by a forklift which crushed his legs, feet and pelvis. The entire medical record was reviewed by the Court. AR 279-480. The medical evidence will be referenced below as necessary to this Court's decision.

**2009 Hearing Testimony**

ALJ Robert Milton Erickson held a preliminary hearing on July 29, 2009 in San Francisco, California. AR 45. Plaintiff appeared *pro se.* AR 43-60. Plaintiff stated that he understood his rights as to representation but that he wanted to proceed without a representative. AR 46. The ALJ first asked Plaintiff about his 2006 workers' compensation claim. AR 46. Plaintiff stated that as a result of his injury and resulting worker's compensation claim he has been to over 20 facilities. AR 47. Plaintiff requested that the ALJ proceed to a full hearing. AR 49. Expressing reluctance to question Plaintiff further without the appropriate medical records, the ALJ informed Plaintiff that he needed full and complete clinical records supporting Plaintiff's doctor's opinions. AR 51.

The ALJ continued with the hearing and after being duly sworn, Plaintiff testified that he had

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

not worked since June 28, 2006. AR 56. Plaintiff testified that he spends the majority of his time using his computer to complete workers' compensation letters. AR 56. Depending on his pain, Plaintiff stated that he typically spends only five minutes on the computer before resting. AR 56. Plaintiff stated that he lives at home with his parents and the family dog. AR 57. Sometime after his accident, Plaintiff would walk the dog but when doing so he experienced severe pain in his feet and lower back. AR 58. Plaintiff has been unable to take his dog for a walk for over a year due to this pain. AR 57.

With respect to other daily activities, Plaintiff testified that he drove from Tehachapi to Bakersfield for the hearing. AR 58. At the conclusion of the hearing, the ALJ asked Plaintiff to sign a release for additional medical records. The ALJ notified Plaintiff that if necessary he would order an additional hearing. AR 60.

**2010 Hearing Testimony**

ALJ Benjamin F. Parks held a second hearing on April 21, 2010 in San Francisco, California. AR 63. Plaintiff restated he did not want representation. AR 63. Plaintiff testified that at the time of the hearing he was 28 years old. He has his high school diploma as well as "quite a few college credits." AR 64. Before his disability onset date, Plaintiff last worked in construction building steel buildings. AR 65. Plaintiff stated that he stopped working due to chronic pain in his feet, back, and hips. AR 65-73. Plaintiff expressed that his pain stems from a 2006 severe industrial injury. While on the job, Plaintiff was run over by a forklift which crushed his legs, feet and hip. AR 66. After the accident, Plaintiff was hospitalized for a few months and then spent time in a nursing home. AR 78-79. Plaintiff testified that one of his physicians has recommended surgery. AR 70. However, Plaintiff refuses the procedure because his doctor cannot guarantee that surgery will alleviate his pain. AR 70. Plaintiff testified to alleviate his pain the only medication he takes is ibuprofen, stating that workers' compensation would not provide him with a treating physician. AR 73. Plaintiff stated that without a primary treating physician, he cannot receive care or medication refills. AR 74.

With respect to his activities of daily living, Plaintiff testified that on an average day he wakes up at 5:30 am, goes to Bakersfield Junior College from Monday through Thursday and spends the afternoon doing homework on his laptop in bed. AR 74-76. Plaintiff does his own shopping,

cooking, and cleaning, and usually goes to bed around 10:00 pm. AR 76-77. Plaintiff stated he no longer visits friends because he cannot sit too long. AR 75, 77.

With respect to his other physical impairments, Plaintiff stated he had problems sleeping. AR 77. At the hearing, the ALJ noted that most of Plaintiff's records stopped in 2007 and requested that Plaintiff provide him with copies of any records after May 2007. AR 79-81.

Thereafter, the ALJ elicited testimony from Vocational Expert, Linda Ferra. AR 81. The VE testified that Plaintiff previously worked in positions classified as construction worker (DOT 869.687-026), machinist (DOT 600.380-18), yard worker (DOT 211.462-014) and cashier/checker (DOT 211.462-014). AR 82.

The VE was asked to consider four hypothetical questions posed by the ALJ. AR 83. First, VE Ferra was asked to consider jobs a hypothetical person could complete assuming a hypothetical worker of Plaintiff's age, education, and work experience capable of light work with occasional stooping, crawling, bending, no foot pedals and uneven surfaces. VE Ferra indicated such an individual could perform Plaintiff's past relevant work as a cashier/checker. AR 83. Plaintiff could also perform work as a cashier II and a packaging line worker. AR 83.

In a second hypothetical, VE Ferra was asked to consider the same individual, capable of light work with occasional stooping, crawling and bending, no foot pedals and uneven surfaces, but this person could sit for six hours and stand for two hours. AR 83. VE Ferra indicated such an individual could perform the full range of sedentary work including representative jobs as an assembler (DOT 734.687-018) and order clerk (DOT 209.567-014).

In a third hypothetical, VE Ferra was asked to consider the same individual, capable of sedentary work with occasional stooping, crawling and bending, no foot pedals and uneven surfaces, but this person could sit for six hours and stand and walk less than two hours. AR 83. VE Ferra indicated such an individual could not perform any work as it exists in the national economy. AR 84.

In the final hypothetical, VE Ferra was asked to consider the same individual, capable of light work with occasional stooping, crawling and bending, no foot pedals and uneven surfaces, but this person could sit for six hours and stand for two hours with a mental RFC of mild activities of daily

living, and mild for social functioning and moderately impaired for concentration, persistence and pace, and the person would be off task 40 to 50 percent if given detail and complex instructions as well as 40 to 50 percent on simple, repetitive tasks and would be incapable of an "on production" schedule. AR 84. VE Ferra indicated such an individual could not perform any work as it exists in the national economy. AR 85.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 21-30. *See* 20 C.F.R. § 404.1520 (2011). At Step One, the ALJ found that Plaintiff had not worked since the alleged onset date. AR 24. At Step Two, the ALJ found that Plaintiff had severe impairments including traumatic injury to pelvis and lower extremities with residual pelvic nonunion and status post right peroneal nerve decompression and transfer and right foot drop. AR 24-25. At Step Three, the ALJ found that Plaintiff's pelvic fracture met the criteria for Listing 1.06, 20 C.F.R. 404.1520(d).

The ALJ determined that Plaintiff was under a disability, as defined by the Act, from June 28, 2006 through August 31, 2008. AR 25. However, using the eight-step evaluation process the ALJ determined that Plaintiff experienced a medical improvement as of September 1, 2008. Based on his review of the entire record, the ALJ determined that beginning September 1, 2008, Plaintiff retained the residual functional capacity (RFC) to perform light work limited to occasional stooping, crawling, and bending. Plaintiff cannot perform work on uneven surfaces and can only sit for 6 hours in an 8-hour work day, and stand/walk for 2 hours in an 8-hour work day. AR 26. Given this RFC, Plaintiff could perform work as an assembler and order clerk. AR 29. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 29.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

At the outset, the Court notes that the majority of Plaintiff's claims are incomprehensible and devoid of merit. In a list of twenty-two issues—many unsupported by analysis or legal argument—Plaintiff generally argues that the ALJ's decision is not supported by substantial evidence. Under a liberal construction of Plaintiff's briefing, the Court ascertains that Plaintiff's individual challenges can be separated into four distinct issues. Plaintiff argues that the ALJ erred in (1) evaluating the medical evidence in the record supporting the ALJ's finding of medical improvement; (2) assessing his credibility; and (3) relying on the vocational expert's flawed testimony. Finally, Plaintiff argues that his case should be remanded to consider new evidence submitted to the Appeals Council.

**A. Physician's Opinion Evidence**

Plaintiff argues that the ALJ improperly evaluated the medical evidence in the record. (Doc. 20). Specifically, Plaintiff argues that the ALJ erred in crediting the opinion of his treating physician Dr. Gart over the opinion of his other treating physician, Dr. Lewis who opined that Plaintiff must lie down to alleviate pain. Defendant responds that the ALJ's consideration of the medical opinion evidence was proper.

Where the issue of continued disability or medical improvement is concerned, "a presumption of continuing disability arises" in the claimant's favor once that claimant has been found to be disabled. *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citing *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983)). The Commissioner has the "burden of producing evidence sufficient to rebut [the] presumption of continuing disability." *Id.*; *see also Murray*, 722 F.2d at 500 ("The Secretary . . . has the burden to come forward with evidence of improvement."). However, a reviewing court will not set aside a decision to terminate benefits unless the determination is based on legal error or is not supported by substantial evidence in the record as a whole.[3] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *accord Bellamy*, 755 F.2d at 1381.

In this case, the ALJ reviewed the record as a whole and determined that Plaintiff experienced a period of disability from June 28, 2006 through August 31, 2008. AR 22. Relying on the medical evidence however, the ALJ found that on September 1, 2008, medical improvement occurred as it related to the ability for Plaintiff to perform light work, except he could not work with foot pedals, or uneven surfaces, could only occasionally stoop, crawl, and bend, could sit for 6 hours in an 8 hour day, and could stand and walk for 2 hours in an 8 hour day. AR 26.

Cases in this Circuit distinguish among the opinions of three types of physicians: (1) those

---

[3] "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *accord Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)); *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

Here, the ALJ gave the opinion of Plaintiff's treating physician Dr. Gart great weight. Dr. Gart, who routinely examined Plaintiff during his recovery, found Plaintiff achieved maximum medical improvement as of June 20, 2008. AR 331-332, 350-351, 370-384, 386. As seen below, the ALJ's decision to credit Dr. Gart's opinion over Dr. Lewis's opinion is based on substantial evidence. *See* 20 C.F.R. § 404.1527(d)(2) (Treating physician opinions are generally given even more weight.)

**1. Dr. Avrom Gart**

On June 21, 2007, treating physician Avrom Gart, M.D., evaluated Plaintiff. AR 331-332. Dr. Gart noted Plaintiff has been on total temporary disability. AR 331. On examination, Plaintiff had mild tenderness in the thoracic paravertebral region, full range of motion of the lumbar spine and weakness in the right ankle. AR 331. Dr. Gart recommended continued physical therapy 3 times a week for the next 6 weeks and prescribed Plaintiff Vicodin for pain. AR 331. Dr. Gart

recommended further testing before deciding on surgical intervention. AR 331-332.

On August 7, 2007, Dr. Gart wrote another progress report from an evaluation of Plaintiff. AR 350-351. Dr. Gart recommended discontinuing physical therapy so Plaintiff could rehabilitate with at least a year of exercise at a gym. AR 350. Dr. Gart noted he believed Plaintiff would be totally temporarily disabled for another six weeks. AR 350.

In January and March 2008, Dr. Gart conducted further examinations of Plaintiff. AR 370-377. Plaintiff had a nerve decompression and transfer performed in November 2007 and reported he was doing better. AR 372. Plaintiff's gait continued to be normal with no tenderness in the spine, hips or knees. AR 376. Furthermore, records from March 2008 noted no ankle instability or swelling present. AR 376-377.

A July 29, 2008 examination from Dr. Gart stated that Plaintiff's orthopedic report of his spine was normal, that Plaintiff had a 1 centimeter leg length discrepancy, but he had reached maximum medical improvement and could perform sedentary work. AR 384. Dr. Gart noted an orthopedists' recommendation that Plaintiff be released to sedentary work activities but Plaintiff wished to make a case for total disability. AR 384. Dr. Gart noted that during his 50-minute visits with Plaintiff, Plaintiff was able to sit on the examination table without any complaints with regard to his back. AR 384. Giving Plaintiff the benefit of the doubt, Dr. Gart noted that although investigative photographs showed Plaintiff carrying a large wooden armoire with another man without difficulties, Plaintiff is unable to perform significant lifting in an occupational setting. AR 382. According to Dr. Gart, Plaintiff could return to work, but should be limited to sedentary jobs. AR 384.

**2. Dr. Marshal Lewis**

After the administrative hearing on April 21, 2010, Plaintiff submitted a May 25, 2010, one-page check list report from Marshal S. Lewis, M.D, a treating physician. In the report, Dr. Lewis states Plaintiff had limitations including a need to have work requiring that he mostly sit down and work that allows him to"lye [sic] down." AR 265, 467.

When presented with conflicting medical evidence, including medical opinions, it is solely the ALJ's responsibility to resolve the conflict. *See Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir.

1999) ("Where medical reports are inconclusive, 'questions of credibility and resolution of conflicts in the testimony are functions solely of the [ALJ]'"); *Magallanes,* 881 F.2d at 750 ("The ALJ is responsible for determining credibility and resolving conflicts in medical testimony"). "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). "Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 404.1527(d)(4).

In his opinion, the ALJ weighed Dr. Lewis's opinion as follows:

> The undersigned gives less weight to the opinion of Dr. Lewis. In a report dated May 25, 2010, Dr. Lewis states the claimant can do mostly sit-down work, and needs to be able to recline as needed to alleviate pain. However, Dr. Lewis' opinion that the claimant needs to recline is not supported by any treatment notes, and is inconsistent with the overall evidence of record. The undersigned therefore gives this opinion little weight.

AR 27.

In this case, there were conflicting opinions regarding Plaintiff's capacity to work. The ALJ gave the greatest weight to the opinion of Dr. Gart, who had treated Plaintiff, and examined Plaintiff on numerous occasions. AR 27, 331-332, 350-351, 370-384, 386. Dr. Gart's opinion that Plaintiff at least could perform sedentary work was consistent with Plaintiff's orthopedist, consultative examiner Dr. Gurvey, and agency D.D.S. physicians. Unlike Dr. Gart's opinion, the form report from Dr. Lewis failed to show support for the opinion. AR 27. Dr. Lewis's opinion is also inconsistent with the medical evidence in the record as Plaintiff failed to present any other treatment records establishing treatment after August 2008.

The ALJ was entitled to discredit Dr. Lewis's medical opinion because it was not supported by medical findings and it was inconsistent with the medical record. These were appropriate reasons, and the ALJ was entitled to resolve the conflict between Dr. Lewis opinion and those of every other doctor in favor of the conclusion supported by the bulk of the objective evidence, including Plaintiff's primary treating physician. Therefore, it was appropriate for the ALJ to find

Dr. Lewis's opinion unsupported by the treatment notes and inconsistent with the overall evidence of the record. Accordingly, the Court will not reverse the ALJ's decision for failure to properly weigh medical opinion testimony.

**B. The ALJ Properly Found that Plaintiff was not Credible**

Plaintiff's next set of arguments surrounds the ALJ's credibility assessment. According to Plaintiff, the ALJ improperly rejected his testimony about the limitations caused by his impairments. (Doc. 20 at 24). Defendant responds that the ALJ's credibility finding is supported by substantial evidence. (Doc. 24 at 10).

The ALJ made an adverse credibility finding because: (1) Plaintiff was prescribed only conservative medical treatment; (2) Plaintiff's activities of daily living were inconsistent with his alleged degree of impairments; and (3) the objective medical evidence did not support Plaintiff's subjective statements. AR 27. An ALJ must make specific findings and state clear and convincing reasons to reject a claimant's symptom testimony unless affirmative evidence of malingering is suggested in the record. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1993); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d at 1281. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter,* 504 F.3dat 1036. Here, the ALJ identified several of Plaintiff's impairments as severe impairments. AR 25. He further found that:

> After careful consideration of the evidence, the undersigned find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible beginning on September 1, 2008, to the extent they are inconsistent with the residual functional capacity assessment.

AR 27.

This finding satisfied step one of the credibility analysis. *Smolen v. Chater*, 80 F.3d at 1281-1282.

Second, "in order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

Specifically, here ALJ Parks made the following findings:

> The claimant states that he takes ibuprofen because workers' compensation will not allow him other medication. The claimant states that his workers' compensation case is still open but they are not giving him any more medical treatment.
>
> ...
>
> The claimant testified that on a typical day he fixes breakfast and goes to school at a junior college. He wants to work in agribusiness. After school he goes home and does homework on a laptop while lying down on his bed. He does all of this own shopping, cooking, and housecleaning. He has difficulty sleeping at night. The

> claimant stated that he has [been] see[ing] doctor[s] since 2007.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible beginning on September 1, 2008, to the extent they are inconsistent with the residual functional capacity assessment.
>
> In terms of the claimant's alleged functional limitations due to pain, the undersigned notes that claimant's statements of disability are inconsistent with claimant's stated activities of daily living. The claimant has noted that he was able to hang Christmas tree lights from the eaves of his house. He has also been able to carry a bucket of hay to feed his horse. The claimant testified to doing his own shopping, cooking, and housecleaning. All these activities are inconsistent with a finding that the claimant is significantly limited in his ability to sit, stand, and walk. In addition, the claimant is taking classes at junior college, which indicated the ability to sit, for a period of time, maintain attention and concentration, and follow through on instructions.
>
> The undersigned notes that at the hearing the issue of more recent medical treatment was discussed, as the file has no evidence of treatment after August 2008. At the hearing, the claimant states that he had had further medical treatment and would provide those records. The undersigned notes that the record was held open for 30 days. During that time the claimant submitted only one item of evidence, which was a treating physician's opinion. No records of treatment were submitted.

AR 26, 27. (Citations omitted).

The ALJ provided a number of clear and convincing reasons that are supported by the record when concluding Plaintiff's subjective symptom testimony was not credible. First, the ALJ noted that Plaintiff currently receives only conservative treatment, which involves taking ibuprofen when he is in pain. AR 26, 73. Plaintiff testified he was not taking any prescription pain medication or undergoing any other treatment for pain beyond September 2008, which casts serious doubt on his allegations of disabling pain. Such conservative treatment is evidence that Plaintiff's claims of disability are not credible. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (subjective pain complaints properly discredited where claimant received "minimal" and "conservative" treatment); *Burch*, 400 F.3d at 681 (finding lack of consistent treatment "powerful evidence" that a plaintiff's claims of disability are not credible). While Plaintiff stated his workers' compensation would not give him any more treatment other than ibuprofen, (AR 26, 73) when the ALJ asked Plaintiff why, Plaintiff did not have an explanation. AR 73-74. To the contrary, the record here shows Plaintiff was given substantial treatment through his workers' compensation. Indeed, Plaintiff testified at the hearing that he has been to over 20 facilities. AR 55. Plaintiff was only treated with ibuprofen even

though he testified the workers' compensation process was still ongoing. AR 26, 74. Despite having an open workers' compensation case where Plaintiff had received treatment from numerous doctors, since August 2008, the record shows Plaintiff receives only conservative treatment for his impairment. This evidence is sufficient to sustain the ALJ's conclusion that Plaintiff's claims of disability are not credible.

Second, Plaintiff's daily activities during the relevant time period were inconsistent with his allegations of disabling symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (allegation of disability undermined by testimony about daily activities). The ALJ found Plaintiff's significant daily activities, including going to school 4 days a week, inconsistent with Plaintiff's claims that he could only sit for 10-15 minutes. AR 27. *See Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012) (ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). The ALJ also found Dr. Gart's observation that Plaintiff could sit at the examination table for 50 minutes without back complaints inconsistent with Plaintiff's claims of disability. AR 27, 384. The ALJ rationally inferred that this evidence was inconsistent with disabling symptoms. AR 27; *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("[a]lthough the evidence of Burch's daily activities may also admit of an interpretation more favorable to Burch," the ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation).

Finally, the ALJ noted that there was sparse objective medical evidence to support Plaintiff's claims of disabling pain. An ALJ is entitled to consider whether there is a lack of objective medical evidence to corroborate a claimant's subjective symptoms, so long as it is not the only reason for discounting the claimant's credibility. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). Here, the ALJ noted that "the file has no evidence of treatment after August 2008." AR 27. The ALJ further stated that even after holding the record open for 30 days, Plaintiff only submitted one additional report from Dr. Lewis, which contained no treatment records. AR 27. In examining the objective evidence, the ALJ detailed that all of the medical evidence for the relevant time period with the exception of Dr. Lewis's report indicated that Plaintiff was capable of performing at least sedentary work, including Plaintiff's treating physician, Dr. Gart.

Given the considerations made by the ALJ, the ALJ properly made "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Consequently, the adverse credibility determination was proper.

**C. The ALJ Did Not Err at Step Five**

Next, Plaintiff attempts to challenge the ALJ's step five determination asserting that the VE's testimony conflicts with the ALJ's RFC. The ALJ found that Plaintiff could stand/walk for 2 hours in an 8 hour day, and he could perform the requirements of representative jobs such as assembler, DOT 734.687-018 and order clerk, DOT 209.567-014.[4] Plaintiff disagrees, arguing that the "packing line worker" job involves occasional standing and walking (up to one-third of the time). According to Plaintiff, it was error for the ALJ to find that he could complete the "packing line" job because occasional standing and walking would require more walking/standing than 2 hours in an 8 hour day. Plaintiff's argument is unpersuasive. Excluding "constantly" or "never," there are two words available for the ALJ's use in an RFC to describe the ability of a claimant to perform "exertional activities:" occasionally and frequently. *See* 1983 SSR LEXIS 30. The word "occasionally" is defined as "occurring from very little up to one-third of the time," while "frequently" is defined as "occurring from one-third to two-thirds of the time." 1983 SSR LEXIS 30; *see also Sparkman v. Astrue*, 2009 U.S. Dist. LEXIS 70968, at * 8-9, n.1 (E.D. Cal. Aug. 12, 2009). The ALJ found that Plaintiff had the ability to stand/walk for 2 hours in a day—an amount well within the range covered by the word "occasionally." Further, it is well established that an ability to stand and walk for 2 hours is equivalent to sedentary work. AR 338. *See, e.g., Blair v. Astrue*, 2013 U.S. Dist. LEXIS 11954 (C.D. Cal. 2013) (finding ability to walk for no more than two hours of an eight-hour day, is not inconsistent with a sedentary RFC); *Cortes v. Astrue*, 2013 U.S. Dist. LEXIS 15658 (E.D. Cal. 2013) (same). The VE listed two jobs that exist in significant numbers in the national economy. AR 83-84. A review of these jobs show they are consistent with the ALJ's RFC as they mostly consist of sitting. *Id. See* DOT 209.567-014, 734.687-018. Given

---

[4] Both jobs are classified in the Dictionary of Occupational Titles as sedentary.

Plaintiff's RFC, the ALJ did not err by relying on the vocational expert's testimony concerning Plaintiff's ability to perform other work. Remand is not warranted on this issue.

**D. Additional Evidence Submitted to the Appeals Council**

Finally, Plaintiff argues that the Appeals Council erred by failing to provide any analysis or relevant comment to the new evidence Plaintiff submitted after the ALJ rendered his decision. Plaintiff alleges that because the Appeals Council did not properly "articulate its rational for denying the request for review," it cannot be determined whether substantial evidence supports the denial of benefits." (Doc. 20 at 14). Plaintiff also argues that his new evidence is material and warrants remand of the ALJ's decision.

After the ALJ denied Plaintiff's application for benefits, Plaintiff submitted to the Appeals Council documentation from Drs. Moon and Schleusner. Plaintiff's new evidence consists of a letter from Dr. Moon recommending that Plaintiff be allowed to lie down periodically while working in order to alleviate pain, and a letter from Plaintiff's treating physician Dr. Schleusner again stating that Plaintiff must lie down throughout the day. (Doc. 20 at 15). The Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" and denied Plaintiff's request for review. AR 10. The Council noted that it had "considered the reasons [Plaintiff] disagrees with the decision and the additional evidence," but it did not otherwise discuss the evidence. *See* AR 10.

The Court "[does] not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011)). Thus, to the extent Plaintiff asks this Court to reverse the Appeals Council's denial of review because the Council failed to provide its own independent discussion of the new evidence, the Court lacks jurisdiction to do so.

To the extent Plaintiff argues that the new evidence by itself warrants remand of the ALJ's decision, it does not. "New and material evidence" that is "submitted to and considered by the Appeals Council is not new but rather is part of the administrative record properly before the district court." *Brewes*, 682 F.3d at 1164; *see also Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999).

The Court therefore "must" consider that evidence "when reviewing the Commissioner's final decision for substantial evidence." *Brewes*, 682 F.3d at 1163 (citing *Tackett*, 180 F.3d at 1097-98). The additional letter's from Drs. Moon and Schleusner were made part of the record by the Appeals Council, and therefore the Court must consider it in "determin[ing] whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence." *Brewes*, 682 F.3d at 1163.

The additional evidence from Plaintiff is not supported by treatment notes and is inconsistent with the overall evidence of the record. Most critically, neither letter from Drs. Moon or Schleusner indicate that Plaintiff was examined after August 2008. This evidence is insubstantial for the same reason that the ALJ rejected the opinion of Dr. Lewis, in favor of Plaintiff's treating physician, Dr. Gart. The ALJ rejected Dr. Lewis's opinion as follows:

> The undersigned gives less weight to the opinion of Dr. Lewis. In a report dated May 25, 2010, Dr. Lewis states that the claimant can do mostly sit-down work, and needs to be able to recline as needed to alleviate pain. However, Dr. Lewis' opinion that the claimant needs to recline is not supported by any treatment notes, and is inconsistent with the overall evidence of the record. The undersigned therefore gives this opinion little weight.

AR 27.

There are no treatment records from Drs. Moon or Schleusener after August 2008 supporting these opinions. Both opinions simply state that it would be ideal if Plaintiff could lie down throughout the work day. Due to the lack of objective evidence supporting their opinions, the ALJ was free to rely on the opinion of Plaintiff's treating physician. The ALJ noted that Dr. Gart had seen Plaintiff numerous times and agreed that after June 2008, Plaintiff could return to work.

Based on the review of the entire record, including the additional documents given to the Appeals Council, the Court finds the ALJ's decision is based on substantial evidence. The new evidence before the Appeals Council does not indicate whether it relates to the relevant time period, and more importantly it is not supported by objective clinical findings or treatment records. Therefore, the evidence does not provide a basis for reversing the ALJ's decision.

**E. Plaintiff's Request for Court Order**

On February 14, 2013, Plaintiff filed a "Motion for the Court to Order Dr. Gart to restate his final opinion regarding Plaintiff's work restrictions as it is unprofessional." (Doc. 27). According to Plaintiff, he has asked Dr. Gart to restate his July 31, 2008 opinion, but Dr. Gart has failed to do

so. (Doc. 27 at 2). Plaintiff's motion is DENIED. The ALJ made no finding that the evidence was ambiguous or that the record was inadequate to allow for proper evaluation. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). In addition, as noted above, the ALJ kept the record open for 30 days to allow Plaintiff to submit additional evidence. AR 27; *see Tonapetyan,* 242 F.3d at 1150 (ALJ satisfies duty to develop record by keeping the record open to allow supplementation). Further, plaintiff has not shown that this Court has jurisdiction over Dr. Gart. Here, even assuming the Court has jurisdiction over Dr. Gart, the record has been fully developed, and there is no need for additional clarification from Dr. Gart. For these reasons, Plaintiff's Motion for a court order re Dr. Gart is DENIED. (Doc. 27).

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security and against Plaintiff, Ryan Stevens.

IT IS SO ORDERED.

**Dated: March 29, 2013** /s/ **Barbara A. McAuliffe**
UNITED STATES MAGISTRATE JUDGE